# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 95 CR 40 | DATE | NOV. 18, 2004 |
| CASE TITLE | UNITED STATES OF AMERICA v. PAUL L. GLOVER | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]

Defendant's motion for reduction of disability [151] is denied.

(11) ■ [For further detail see Memorandum Opinion and Order attached to this original minute order.]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA, )
 )
 Plaintiff, )
 )
v. ) No. 95 CR 40
 )
PAUL L. GLOVER, )
 )
 Defendant. )

**DOCKETED**

**NOV 2 2 2004**

## MEMORANDUM OPINION AND ORDER

Defendant Paul Glover was formerly the Vice-President and General Counsel of the Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) ("CTDU"). Defendant was charged with a number of federal offenses involving a series of investments that he arranged to be made with money from benefit funds of the CTDU. Defendant entered into these transactions on the funds' behalf for the purpose of obtaining kickbacks for himself and others. The offense conduct occurred from 1987 through 1992. An indictment was returned in January 1995. In May 1995, defendant's first trial ended in a mistrial. In June 1995, following a second jury trial, defendant was found guilty of one count of a conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d);

11 counts of soliciting and receiving kickbacks in violation of 18 U.S.C. § 1954; two counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and four counts of tax evasion in violation of 26 U.S.C. § 7206. In November 1995, defendant began serving his sentence of incarceration. Defendant's conviction and sentence were affirmed on direct appeal. See United States v. Glover, 101 F.3d 1183 (7th Cir. 1996) ("Glover I").

A subsequent motion to vacate under 28 U.S.C. § 2255 was denied by this court and initially affirmed on appeal. See United States v. Glover, 1998 WL 611451 (N.D. Ill. Sept. 8, 1998), aff'd, Glover v. United States, 182 F.3d 921, 1999 WL 511523 (7th Cir. July 15, 1999) (unpublished order). Reversing Seventh Circuit precedent that had been followed by this court, the Supreme Court remanded the case for further proceedings regarding defendant's sentence. Glover v. United States, 531 U.S. 198 (2001). On remand, this court determined that defendant's sentence should be vacated and that he should be resentenced. See United States v. Glover, 149 F. Supp. 2d 371 (N.D. Ill. 2001). On resentencing in June 2001, defendant was sentenced to a total of 70 months' incarceration, to be followed by three years' supervised release. Defendant was also ordered to pay a $900.00 special assessment and $16,811.84 for the costs of prosecution and to forfeit $350,000.00. The sentencing order also provides: "Pursuant to Title 29, United States Code, Section 504, the defendant may not in any capacity be involved in any labor organization for a period of thirteen years after end

of imprisonment." Having already served sufficient time, defendant was immediately released from confinement. Less than a month after being released, defendant, proceeding pro se,[1] moved this court to exempt him from the § 504 prohibition to the limited extent of permitting him to act as a labor relations consultant for employers. That motion was denied as premature and, alternatively, because defendant failed to make an adequate showing of rehabilitation. See United States v. Glover, 2001 WL 1414451 (N.D. Ill. Nov. 13, 2001) ("Glover VI").

On June 6, 2004, defendant completed his term of supervised release. On June 14, he filed a new motion to reduce the § 504 disability so that he may practice as a labor consultant to management. The United States Attorney and the Secretary of Labor oppose that motion. The probation officer who supervised defendant during his term of supervised release also recommends that the motion be denied.[2]

Section 504 requires that a person convicted of certain specified offenses be prohibited from serving in certain labor organization related positions, including labor relations consultant or adviser to an employer. See 29 U.S.C. § 504(a)(3). The prohibition period is to be for 13 years after conviction or

---

[1] Prior to his conviction, defendant was a licensed attorney with substantial civil litigation experience. He is not presently permitted to practice law.

[2] Notice of these proceedings has also been provided to the Cook County State's Attorney and Illinois Attorney General, neither of whom joined in expressing any view regarding the pending motion.

the end of any term of incarceration, whichever is later, unless the sentencing court sets a lesser period, not to be less than three years. There is no dispute that the sentencing order in the present case prohibits defendant from presently serving as a labor relations consultant for an employer engaged in an industry affecting interstate commerce. As to defendant's situation, § 504(a) also provides that if, after the end of defendant's term of incarceration, "the sentencing judge . . ., pursuant to sentencing guidelines and policy statements under section 994(a) of Title 28, determines that such person's service in any capacity referred to in [§ 504(a)(1) through (5)] would not be contrary to the purposes of this chapter," the defendant may be permitted to serve in such capacity. Sentencing Guideline Policy Statement 5J1.1 provides: "relief shall not be given to aid rehabilitation, but may be granted only following a clear demonstration by the convicted person that he or she has been rehabilitated since commission of the disqualifying crime and can therefore be trusted not to endanger the organization in the position for which he or she seeks relief from disability."

Defendant does not dispute that he has the burden of clearly demonstrating that he is rehabilitated and may be trusted to act properly in the position for which he seeks permission. Here, plaintiff's criminal conduct involved the misuse of the monies of employee benefit funds with which he had a fiduciary relationship and the acceptance of kickbacks related to the employee benefit funds. Additionally, for sentencing purposes,

it was found that, at his first trial, plaintiff had obstructed justice by providing perjurious testimony regarding his own conduct. See Glover I, 101 F.3d at 1192-93. Furthermore, defendant's contention in his first § 504 motion regarding his 1992 through 1995 labor consulting showing that he was on the road to rehabilitation and could act properly in the role of labor consultant was rejected by this court. See Glover VI, 2001 WL 1414451 at *2-3. Thus, before this court, defendant is a person lacking credibility, particularly regarding statements about his own conduct and his ability to act with honesty and integrity. His present self-serving statements regarding his past and future conduct, therefore, must be viewed with skepticism, especially when the government points to contrary evidence or indications.

Defendant contends his rehabilitation is demonstrated by the following. After his employment with CTDU was terminated in 1992, he performed labor consulting work until he was sentenced in 1995. Defendant points to the fact that he was not charged with any crimes during that time period. While incarcerated, defendant received favorable evaluations, worked, and made regular payments of his assessment and court costs. While on supervised release, plaintiff made all payments that were required of him and his supervised release was terminated at the end of the three-year period. He also turned over $5,000.00 he received as settlement for a malpractice claim. He has given talks to law students regarding his criminal conduct in an

attempt to urge them to act ethically in their profession and has received high praise for these talks from law school professors. Following his 2001 release from prison, defendant has performed research for labor arbitrators.

The government, however, questions the accuracy of a number of these representations. It is undisputed that defendant established Glover & Associates ("GA"). Although ownership of GA is in the name of defendant's wife, Deborah Glover, defendant does not dispute that he was the primary mover establishing the company and is its principal worker and income producer. All the income for the company comes from fees charged for work performed by defendant himself. Defendant states that his wife provided the money to establish the company and that she also does clerical work for the company. He contends that, because she provided the funds for incorporating GA and purchasing clerical supplies and equipment, that is why she is the owner. There is no statement from defendant that any income received by his wife is used only for herself and not for the family, including him. There is no statement that defendant and his wife keep all their finances entirely separate. Moreover, although this was an opportunity to provide a corroborative statement from someone other than just defendant himself, there is no affidavit from Deborah Glover corroborating any of the statements made by defendant regarding the establishment of GA. Instead of defendant simply holding himself out as an independent contractor, the income derived from defendant's work is paid to

GA and he receives a set salary of $1,200.00 a month from GA. GA appears to be set up for the primary purpose of making a significant portion of defendant's earnings instead appear to be income of his wife. By operating in this manner, defendant's own income was made to appear smaller and he was expected to pay less toward his court costs and forfeiture judgment. Defendant lacks credibility. His representations regarding the reasons for establishing GA will not be accepted. Defendant has not demonstrated that he has made a good faith effort to pay off his court costs and forfeiture judgment.

Defendant also argues that, even accepting as true that all of GA's income was really his, the amount of additional payments he would have had to make (approximately $4,000.00) is small compared to the amount of the forfeiture judgment. A few thousand dollars, however, is not itself a <u>di minimis</u> amount. More importantly, the point is not how much in payments defendant may have evaded, but whether he was acting honestly and in good faith. The manner of setting up GA indicates that he was not acting in good faith during the term of his supervised release.

This conduct, by itself, is enough to preclude a finding that defendant has clearly demonstrated that he can be trusted to act properly in the role of labor consultant. It instead indicates that defendant is willing to bend the rules and stretch them to the limits and beyond in order to act in his own personal interest.

There is also other evidence that defendant has not been fully and faithfully following the rules that are applicable to him. During the term of his supervised release, defendant and his wife made plans to establish a post-conviction consulting service for white collar criminals. They intended to advise white collar criminals and their families regarding coping with the time while the convict is incarcerated and readjusting following the convict's release. Defendant's probation officer advised him that he could not participate in such an activity because it would involve his meeting with convicted felons, which was not permitted under the terms of his supervised release. Nevertheless, defendant went ahead with attempting to establish the business, but decided to drop it because he eventually concluded that it would not be successful if he could only meet the families and attorneys while his wife would be the only one who could meet with the felons. Defendant's statements that, during the term of his supervised release, he never actually met with any convicted felon as part of this venture is accepted. Nevertheless, defendant disobeyed the instructions of his probation officer that he could not engage in this form of work. Defendant does not contend that he had his probation officer's permission to engage in this venture with the modification that he himself would not meet with any of the convicts. On his own, defendant decided to modify the venture and go ahead with it. Perhaps the probation officer would have approved in light of the modification. The point is, though, that defendant unilaterally

went ahead and engaged in conduct for which he needed the permission of his probation officer or the court, but did not obtain such permission.

There is a sufficient basis for denying defendant's present motion.

IT IS THEREFORE ORDERED that defendant's motion for reduction of disability [151] is denied.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: NOVEMBER 18, 2004